IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 00-00091 WHA |
| Plaintiff, | |
| v. | |
| RAFAEL HERNANDEZ-GUMORA, | |
| Defendant. | |
| UNITED STATES OF AMERICA, | No. CR 08-730-WHA |
| Plaintiff, | |
| v. | |
| MANUEL FRANCO, | |
| Defendant. | |
| UNITED STATES OF AMERICA, | No. CR 10-102-CRB |
| Plaintiff, | |
| v. | |
| JOHN MAGPANTAY, | |
| Defendant. | |
| UNITED STATES OF AMERICA, | No. CR 04-407-MMC |
| Plaintiff, | |
| v. | |
| ANDREA NEAL PICKRELL, | |
| Defendant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 04-417-MMC |
| Plaintiff, | |
| v. | |
| HENRY TOBIAS, | |
| Defendant. | |
| UNITED STATES OF AMERICA, | No. CR 09-527-DLJ |
| Plaintiff, | |
| v. | |
| VINCENT D. HUNTER, | |
| Defendant. | |
| UNITED STATES OF AMERICA, | No. CR 09-1163-JSW |
| Plaintiff, | |
| v. | |
| ANTONIO LACERDA, | |
| Defendant. | |
| UNITED STATES OF AMERICA, | No. CR 09-1124-SI |
| Plaintiff, | |
| v. | |
| BLANCA SILVA, | |
| Defendant. | |

**ORDER RE MOTIONS FOR RESTRAINING ORDERS FILED BY ATTORNEY GERI GREEN**

## INTRODUCTION

In this fee dispute between a CJA attorney and her freelance paralegal, the attorney has filed emergency motions in eight pending criminal actions before six different judges in this district seeking relief from a state administrative agency award for failure to pay her paralegal.

2

1 All assigned judges have consented to have the undersigned judge adjudicate the parallel
2 motions. Although the CJA attorney is largely correct in her view of the federal law at issue, the
3 extraordinary relief requested must, on the equities, be **DENIED**.

**STATEMENT**

Attorney Geri Green was (but no longer is) on this district's panel of private lawyers eligible for appointment to represent indigent accuseds in criminal cases under the Criminal Justice Act, 18 U.S.C. 3006(A), our so-called CJA panel attorneys. The CJA panel attorneys perform vital work for the district court and the nation and are a valued part of our criminal justice system. Since 2007, Attorney Green has been appointed as CJA counsel in at least fourteen cases. In the eight federal criminal cases at issue here, she used a freelance paralegal, Marcie Dresbaugh, who was authorized to incur a certain amount of time in the cases pursuant to the Act, General Order Numbers 2 and 50, and this district's CJA Policy Manual. *See* General Order Nos. 2 and 50, *available at* www.cand.uscourts.gov/generalorders; CJA Policy Manual, *available at* www.cand.uscourts.gov/guidelines.

Although Attorney Green submitted the original request for authorization to use Ms. Dresbaugh as a paralegal, where such pre-approval was necessary, Ms. Dresbaugh herself invoiced our CJA Unit and was paid directly by the CJA Unit. That is, Ms. Dresbaugh's billings and payment did not travel through Attorney Green, except to the extent that a CJA attorney must sign the service providers' voucher to certify that the services were rendered in a particular CJA case. Because some of the billings were in excess of the limit imposed in advance or were not otherwise justified, the CJA payments to Paralegal Dresbaugh were somewhat less than the amounts she invoiced. Again, the checks were sent to Paralegal Dresbaugh at her separate work address on Sutter Street in San Francisco, not to Attorney Green's office address on Montgomery Street.

Ordinarily, the CJA story would have ended there (subject to any federal appeals, of which there were none). It turns out, however, that Paralegal Dresbaugh went to the California Division of Labor Standards Enforcement and complained that Attorney Green owed her the shortfall (plus overtime and penalties), claiming that an employer-employee relationship existed

3

between them. Ms. Dresbaugh first filed her claim with the DLSE on February 17, 2011. Significantly, her claim involved both CJA work and non-CJA work, the latter having nothing to do with our CJA process. One of her CJA invoices was still being reviewed for supplemental CJA payment at the time she complained about it to the DLSE. On October 13, 2011, the DLSE issued an award finding that Ms. Dresbaugh was an "employee" of Attorney Green and was owed $4942 in back wages and $5078 in interest and penalties thereon (Beckelman Decl. ¶ 4). Of that back-pay amount, $2382 was for CJA matters; the remainder of the award was for private, retained, non-CJA work. Notably, the CJA Unit subsequently awarded Ms. Dresbaugh another $1682, so the DLSE award was based on premature information — that is, the CJA tabulation was still a work in progress when the DLSE award was decided.

Attorney Green then filed an appeal in San Francisco Superior Court, captioned *Marcella Dresbaugh v. Law Office of Geri Lynn Green, L.C.*, Case No. CGC-11-515557. Ms. Dresbaugh is represented in that action by the DLSE, which now seeks attorney's fees in addition to the DLSE award. While the action was pending, as stated, additional CJA funds were requested and paid to Paralegal Dresbaugh in the amount of $1682 for prior work performed in our *Franco* case. Thus, the total shortfall for all CJA cases between the invoiced bills submitted by Paralegal Dresbaugh and the payments made to her by the CJA Unit now comes to $700. At our recent hearing, DLSE counsel were unable to explain the extent to which, if at all, the most recent CJA payment has been backed out of the DLSE award.

After numerous postponements, the state action was set for trial in San Francisco Superior Court on March 18, 2013. That same day — over two years after Ms. Dresbaugh first filed her claim with the DLSE and more than one year after she filed the appeal — Attorney Green filed emergency motions seeking a temporary restraining order, permanent injunction, and contempt order here in eight federal criminal matters. Attorney Green's motions seek to enjoin Ms. Dresbaugh and the DLSE from enforcement of the DLSE's award against Attorney Green and to enjoin them from litigating her appeal in state court. Attorney Green noticed the motions to be heard in our court on or after March 26, a date by which the state court trial was either

expected to be completed or virtually completed. She did not move the state court for a stay to allow the federal court to consider the motions prior to trial.

Meanwhile, trial proceeded in San Francisco Superior Court before the Honorable A. James Robertson. Final arguments in that case were scheduled for immediately after our own hearing yesterday. It may be helpful to Judge Robertson and the DLSE to have the benefit of our view of the matter from across the street, so this order will take the time to explain the CJA law and program.

Again, the assigned judges in the eight federal actions listed below have agreed to allow the undersigned judge to adjudicate Attorney Green's motions, given their parallel nature. In each of these actions, Paralegal Dresbaugh billed the CJA for work performed, and received payment from the CJA of less than the total invoiced amount. For example, out of invoices totaling $11,210.50 on the *Franco* case, Paralegal Dresbaugh was paid $10,682 by the CJA after review and auditing — a shortfall of $528.50. The amounts invoiced by Paralegal Dresbaugh compared to the amounts she was paid by CJA are listed in the table below:

| Case | Amount Invoiced by Dresbaugh | Amount Paid to Dresbaugh by CJA | Difference |
| --- | --- | --- | --- |
| United States of America v. Manuel Franco, No. CR 08-730-WHA | $11,210.50 | $10,682.00 | $528.50 |
| United States of America v. Rafael Hernandez-Gumora, No. CR 00-91-WHA | $413.00 | $399.00 | $14.00 |
| United States of America v. John Magpantay, No. CR 10-102-CRB | $343.00 | $311.50 | $31.50 |
| United States of America v. Andrea Neal Pickrell, No. CR 04-407-MMC | $87.50 | $80.50 | $7.00 |
| United States of America v. Henry Tobias, No. CR 04-417-MMC | $45.50 | $38.50 | $7.00 |

5

|  |  |  |  |
|---|---|---|---|
| United States of America v. Vincent D. Hunter, No. CR 09-527-DLJ | $259.00 | $161.00 | $98.00 |
| United States of America v. Antonio Lacerda, No. CR 09-1163-JSW | $1,620.50 | $1,613.50 | $7.00 |
| United States of America v. Blanca Silva, No. CR 09-1124-SI | $136.50 | $129.50 | $7.00 |
| **Total** | $14,115.50 | $13,415.50 | $700.00 |

In sum, the federal portion of this dispute is a fight over $700 (plus penalties and overtime attributed thereto). For the following reasons, Attorney Green's view of the federal law is largely correct but the extraordinary relief she seeks must be **DENIED**.

## ANALYSIS

The Criminal Justice Act provides in part that:

> Except as so authorized or directed, no such person or organization may request or accept any payment or promise of payment for representing a defendant.

18 U.S.C. 3006A(f). Under this provision, a paralegal providing services on behalf of an indigent defendant who directly submits invoices to the district court for CJA payment may *not* accept payment from any other person for any portion of the invoice that is denied by the court. As held by the Seventh Circuit in a similar case, once a district court authorizes funds for a service provider upon request of CJA-appointed counsel, "the government is generally the sole source of payment for services rendered unless the district court finds that funds are available from or on behalf of the defendant for this purpose." *See United States v. Silva*, 140 F.3d 1098 (7th Cir. 1998). Our own court of appeals has not ruled on the issue, but this order anticipates that it would follow the *Silva* decision. Any other result would jeopardize an important federal statute by putting CJA attorneys at risk for unpaid amounts and thus dissuading attorneys from taking on CJA cases in the first place.

In this district, General Order Numbers 2 and 50 and the CJA Policy Manual set forth the specific procedures and requirements for providing and receiving payment for representation of

6

indigent defendants under the Act. These orders and guidance were in effect in relevant part and available during the period at issue, 2009 through 2012. *See* General Order No. 2, filed Jan. 3, 1973 (*amended* Feb. 20, 2000, Dec. 20, 2011, and Feb. 23, 2012); General Order No. 50, filed June 30, 2000 (*amended* Oct. 16, 2000, Apr. 24, 2001, June 18, 2002, Mar. 15, 2005, and Dec. 20, 2011); CJA Policy Manual. Specifically, the CJA plan provides that appointed counsel may obtain, subject to later review, necessary services without prior authorization if the total cost of services does not exceed a certain amount (in 2005, that limit was set at $500; the limit was later raised to $800). *See* General Order No. 50, dated Mar. 15, 2005, at 2; General Order No. 50, dated Dec. 20, 2011, at 4. For services exceeding this amount, CJA counsel must seek prior authorization of funds from the district court. In all instances, the services invoiced must be both reasonable and necessary for the effective representation of the indigent defendant.

The General Orders and CJA Policy Manual set forth detailed instructions and procedures for counsel and service providers regarding the submission of invoices, the process for seeking authorization of funds, and so on. Service providers are expected to be informed of and to comply with the specific terms of the court's funding authorization orders, including not billing in excess of the amount authorized. With regard to paralegal services, our CJA Policy Manual states that:

> Use of paralegals is encouraged but must be pre-approved if the expenditure will exceed $800.00, whether independent or employed in the same firm as appointed counsel . . . The CJA guideline rate is $35.00 to $55.00 per hour, depending on skills and experience. For paralegals who are employees, the appropriate hourly rate is the salaried hourly rate, plus costs of employer-paid basic benefits. Whether in house or independent, paralegals must be billed on a separate CJA 21 of CJA 31, even if the payee is the attorney or law firm.

CJA Policy Manual. Paralegal Dresbaugh requested and received an hourly rate of $35.00 per hour. This is consistent with the billing rate of an independent paralegal, rather than the in-house paralegal rate, which is calculated as hourly salary plus employer-paid benefits. Moreover, as a general matter, invoices from in-house paralegals are submitted to the CJA Unit by the employer law firm; in contrast, independent paralegals submit invoices to, and receive payment directly from, the CJA Unit, as was the case with Paralegal Dresbaugh.

7

By submitting invoices and receiving payments from the CJA Unit for services provided to indigent defendants, Paralegal Dresbaugh was benefitting from and acquiescing in the funding source established by the Act and thus its terms as implemented in this district. This does not necessarily mean that she was (or was not) an independent contractor for CJA purposes — that terminology is beside the point. The main point is this: Having provided and received payment for paralegal services for indigent clients from 2009 through 2012, Paralegal Dresbaugh accepted and acquiesced in our CJA policy and procedures, which establish a carefully regulated system through which payment is made for services only if specific requirements are met. *Importantly, under the Act, service providers are limited to whatever they receive under our CJA plan*. Any other rule would put CJA counsel at risk from suits like this one and deter them from taking CJA cases in the first place. This would frustrate an Act of Congress. Paralegal Dresbaugh is in violation of 18 U.S.C. 3006A(f).

No one should worry over the possibility that CJA attorneys will run roughshod over freelance paralegals and badger them into working beyond the authorized limits. We have one of the best managed CJA programs in the United States. If we learn of any such abuse, we will address it by removing the attorney from the CJA panel or by other appropriate action. Furthermore, the CJA Manual informs claimants, which would include service providers such as Ms. Dresbaugh, that they can request a copy of any modified vouchers or inquire as to the specific reasons for any reduction.

\*     \*     \*

Had Attorney Green sought the relief now requested when the state agency proceeding began, then the district court would presumably have had the authority under the All-Writs Act, 28 U.S.C. 1651(a), to preserve its exclusive jurisdiction to regulate invoicing and payment for its CJA providers. Very possibly, the district court would have intervened to protect its federal CJA interest. Given the fact that Paralegal Dresbaugh directly billed and received payment from the CJA Unit, rather than billing through Attorney Green, everyone concerned should have known that payment for CJA services was limited to that allowed by the district court. Indeed,

8

1 Ms. Dresbaugh's own contemporary statement appears to reflect this understanding. In an email
2 to the CJA Unit dated July 20, 2010, Ms. Dresbaugh thanked CJA Unit staff for providing
3 instructions regarding requesting transcripts and stated, "I am an independent contractor who does
4 free lance paralegal work from [Geri Green's] office, so perhaps they didn't think to pass it along
5 to me." How Ms. Dresbaugh could have claimed otherwise to the DLSE is a mystery. As far as
6 our court is aware, Ms. Dresbaugh is the first freelance paralegal ever to sue a CJA attorney over
7 unpaid CJA invoices.

8       Instead of seeking such prompt relief from the district court, however, Attorney Green
9 waited and took her chances with the DLSE, perhaps because most of the amounts at issue were
10 on retained matters and not on CJA matters. After she acquiesced in the DLSE process and
11 received an adverse outcome, Attorney Green then filed an appeal in state court, the very appeal
12 she is now trying to stop dead in its tracks. By letter dated October 27, 2011, Attorney Green
13 requested that the CJA Unit indemnify her, but she never sought any of the federal relief that she
14 now seeks through her motions. While Attorney Green's letter requesting indemnification
15 indicated that she was preparing to file a federal action for declaratory and injunctive relief, no
16 such action was ever filed. Instead, she waited until the first day of trial in her own appeal to seek
17 relief. Attorney Green has proceeded on a course of strategic convenience and delay. This has
18 resulted in a federal-state collision that could have been avoided by a more timely motion. For
19 the foregoing reasons, her request for injunctive relief is **DENIED**.

20       In denying extraordinary relief, this order does not suggest that the California courts
21 should ignore the federal CJA issue or deny relief to Attorney Green. To the contrary, this order
22 has laid out the way our federal CJA system works so that the information will be available for
23 consideration by the California courts. Those courts are fully capable of vindicating the federal
24 interest if it deserves to be vindicated in the particulars of a given record. Attorney Green
25 acquiesced in state court proceedings (and herself took the appeal in question to state court).
26 Consequently, she will now have to look to that system for final relief and to the able judgment of
27 Judge Robertson. Perhaps Judge Robertson would be inclined to reduce the DLSE award to the

9

1  extent it is based upon amounts billed to the federal CJA, whether paid or not.  It is up to Judge
2  Robertson.

### CONCLUSION

For the reasons stated above, the motions for a temporary restraining order, preliminary injunction, and contempt order are **DENIED**.  Given that these motions have been filed in criminal cases already closed, these motions are now over and closed at the district court and any further federal relief must be sought from our court of appeals.

**IT IS SO ORDERED.**

Dated:  March 27, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE